UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HARVEY W. ANDERSON,           )
                              )
                  Plaintiff,  )        Case No. 1:14-cv-1055
                              )
v.                            )        Honorable Paul L. Maloney
                              )
COMMISSIONER OF               )
SOCIAL SECURITY,              )
                              )
                  Defendant.  )
_____)

## OPINION

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.   On February 7, 2012, plaintiff filed his applications for DIB and SSI benefits.   (PageID.171-78).   He alleged an October 15, 2007, onset of disability.  (PageID.171, 173).   Plaintiff's disability insured status expired on December 31, 2012.   Thus, it was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before December 31, 2012.   *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims were denied on initial review.   (PageID.92-117).   On April 25, 2013, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel.   (PageID.67-88).   On May 8, 2013, the ALJ issued

her decision finding that plaintiff was not disabled. (PageID.51-62). On August 13, 2014, the Appeals Council denied review (PageID.24-26), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. He asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ erred in finding that plaintiff's carpal tunnel syndrome was not a severe impairment.

2. The ALJ erred in assessing residual functional capacity and in concluding that the plaintiff was capable of performing substantial gainful activity.

(Statement of Errors, Plf. Brief at 4, ECF No. 11, PageID.568).

Upon review of the record, and for the reasons stated herein, the Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the Court's review is limited. *Buxton*, 246 F.3d at 772. The

- 2 -

Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.   *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).   "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."   42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).   "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.   . . .   This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."   *Buxton*, 246 F.3d at 772-73.   "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."   *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").   "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."   *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from October 15, 2007, through December 31, 2012, but not thereafter.   (Op. at 3, PageID.53).   Plaintiff had not engaged in substantial gainful activity on or after October 15, 2007.   (*Id.*).   Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, chronic obstructive pulmonary disease, and a mood disorder (anxiety/depression)."   (*Id.*).   Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments.   (*Id.* at 4, PageID.54).   The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations no climbing of ladders; occasional climbing of stairs, crouching and stooping; no crawling; no use of foot or leg controls; and no concentrated exposure to fumes, dusts or gasses. The claimant can perform simple, routine work.

(Op. at 5, PageID.55).   The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible.   (*Id.* at 5-11, PageID.55-61).

Plaintiff was 42 years old as of his alleged onset of disability and 47 years old as of the date of the ALJ's decision.   Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual.   (*Id.* at 11, PageID.61).   Plaintiff has a limited education and is able to communicate in English.   (*Id.*).   The transferability of job skills was not material to a disability

- 4 -

determination.   (*Id.*).   The ALJ then turned to the testimony of a vocational expert (VE).

In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 240,000 jobs in the national economy that the hypothetical person would be capable of performing.   (*Id.* at 11-12, PageID.61-62; *see* PageID.81-84). The ALJ found that this constituted a significant number of jobs.   Using Rule 202.17 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.   (Op. at 11-12, PageID.61-62).

### 1.

Plaintiff argues that the ALJ should have included carpal tunnel syndrome as an additional severe impairment at step 2 of the sequential analysis.   (Plf. Brief at 12-13, Page ID 576-77; Reply Brief at 2, PageID.599).   The finding of a severe impairment at step 2 is a threshold determination.   The finding of a single severe impairment is sufficient to require continuation of the sequential analysis.   *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had four severe impairments.   (Op. at 3, PageID.53).   The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant."   *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).   The ALJ continued the sequential analysis and considered all plaintiff's severe and non-severe impairments in making her factual finding regarding

plaintiff's RFC.   (Op. at 2, 5-11, PageID.52, 55-61).   Plaintiff's assignment of error is legally unsupportable.

## 2.

Plaintiff's second claim of error is that the ALJ erred in her factual finding regarding his RFC and in concluding that plaintiff was capable of performing substantial gainful activity.   (Statement of Errors ¶ 2, Plf. Brief at 4, PageID.568). He argues that the ALJ should have given greater weight to a RFC questionnaire signed by Howard Mahabeer, M.D., one of plaintiff's treating physicians.   (Plf. Brief at 14-18, PageID.578-82; Reply Brief at 3-4, PageID.600-01).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).   A treating physician's opinion that a patient is disabled is not entitled to any special significance.   See 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").   Likewise, "no special significance"[1] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the

---

1 "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section."   20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Blankenship v. Commissioner*, 624 F. App'x 419, 429-30 (6th Cir. 2015).

requirements of a listed impairment because they are administrative issues reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.   *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).   "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.   Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"   *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir.   2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).   A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met:   (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."   *Buxton v.*

*Halter*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff alleged an October 15, 2007, onset of disability. He did not present any medical evidence corresponding to his alleged onset of disability. He testified

that he had never required emergency room treatment at any time since his alleged onset of disability.   (PageID.77).   Further, he indicated that he was not seeing any counselor, psychologist, or other mental health care provider.   (*Id.*).

The ALJ noted that when plaintiff presented as a new patient on April 1, 2008, with Marla Vance, M.D., complaining of chronic low back pain, he "reported that he had not seen a physician in over ten years and had not been to an emergency room." (Op. at 6, PageID.56).   Plaintiff had no significant complaints other than back pain. He had no weakness or bladder or bowel incontinence.   Plaintiff indicated that he occasionally took Tylenol.   He conceded that he had obtained "Vicodin from various friends."   (PageID.283).

Dr. Vance instructed plaintiff to stop smoking cigarettes and marijuana. (PageID.282-83).   Plaintiff's drug screen was positive for cannabinoids. (PageID.443).   Plaintiff's strength was 5/5 bilaterally in his lower extremities.   His reflexes were 2+ bilaterally.   His straight leg raising test was negative on the left and questionably positive on the right.   He did have some paraspinal tenderness. (PageID.283).   Dr. Vance agreed to give plaintiff a small supply of medication until she had the results of plaintiff's drug screen:   "We will go ahead and have him do a drug screen.   He signed a narcotic agreement.   He does smoke marijuana and I did tell him that in signing the narcotic agreement he no longer will be able to smoke marijuana.   If he does come back with a urine positive for marijuana after six weeks from now, he will no longer get narcotic medications from our office.   He did agree to stop smoking marijuana.   We will go ahead and give him a muscle relaxant toda[y],

anti-inflammatory Motrin with food as well as a few Vicodin to use sparingly only as needed depending on what his drug screen shows."  (PageID.282).

On April 1, 2008, the x-rays taken of plaintiff's lumbar spine indicated "[m]ild degenerative disc space narrowing at L5-S1 and minimal narrowing of the L4-L5 disc space."  A grade 1 spondylolisthesis of L5 on S1 was noted.  (PageID.287, 475). The x-rays of plaintiff's thoracic spine showed "[m]ild degenerative change." (PageID.290, 474).  A CT of plaintiff's cervical spine on April 1, 2008, showed no fracture or malalignment.   Plaintiff's paravertebral soft tissues were unremarkable. Vertebral bodies were normal in height an alignment.   Moderately advanced degenerative change with spondylitic spur formation was indicated at C5-C6. (PageID.286, 473).   The follow-up MRI on April 25, 2008, showed "[m]ild degenerative change of the cervical spine."  (PageID.284, 471).

On May 19, 2008, plaintiff returned to Spectrum Health Reed City for his follow-up appointment with Dr. Vance.   Plaintiff stated that he had refused to have a drug screen performed.   He admitted that he continued to smoke marijuana.   He was smoking marijuana "every day."  (PageID.281, 359).   Dr. Vance told plaintiff that she "would not be able to prescribe any narcotic medication for him under those circumstances."  (PageID.281).   Plaintiff stated that he had a "[c]ough for a couple of years" and described a history of smoking two packs of cigarettes per day for 30 years.   Dr. Vance reiterated that plaintiff "needs to stop smoking."  (PageID.280). Plaintiff did permit a drug screen on May 19, 2008.   It was positive for cannabinoids.

- 10 -

(PageID.355).   It was negative for the Vicodin that Dr. Vance had prescribed a six weeks earlier.   (PageID.354).

On July 10, 2008, Timothy Daum, M.D., noted that plaintiff had chronic obstructive pulmonary disease (COPD).   (PageID.299-302).   Plaintiff had a history of smoking 1 ½ packs of cigarettes per day for 30 years.   (PageID.458).

Plaintiff returned to Spectrum Health on October 13, 2009.   On this occasion he was examined by Mark Marzolf, D.O.   Plaintiff indicated that the purpose of his visit was to "reestablish relationships and to acquire a physical examination for application for Medicaid."   Plaintiff reported depression and neck pain.   He asserted that "Vicodin and use of marijuana [were] the only things that control[led] his pain."   (PageID.279).   Plaintiff continued to smoke marijuana and cigarettes against medical advice.   Plaintiff's deep tendon reflexes were intact and his straight leg raising tests were negative.   Spectrum Health would not prescribe narcotics for plaintiff.   Plaintiff refused the nonsteroidal anti-inflammatory medications or Ultram that Dr. Marzolf offered as alternative medications.   Plaintiff "basically refuse[d] these stating that they d[id] him no good whatsoever."   (*Id.*).

In 2009, plaintiff initiated a brief course of treatment by Kerry Mark Simon, M.D. at Family Care Clinic, P.C. in Ludington, Michigan.   (PageID.306).   Plaintiff maintained a full range of motion in cervical spine.   He had a full range of motion in his extremities.   He was neurologically intact.   His deep tendon reflexes were normal and he maintained good muscular coordination and strength bilaterally.   (PageID.314).   Plaintiff   had   no   history   of   hospitalization   or   surgery.

(PageID.312-13).   On May 13, 2009, in response to plaintiff's complaints of depression, Dr. Simon initiated a trial of Prozac.   (PageID.297-98).   When plaintiff complained of headaches, Dr. Simon initiated a trial of Zoloft.   (PageID.306, 312, 314).   Plaintiff retained a full range of motion in his back and extremities.   He had good muscular strength and did not have any neurological deficits.   On June 9, 2009, plaintiff related that the Zoloft was "working well" and that his condition had improved.   (PageID.309-10).   On July 7, 2009, Dr. Simon continued the Zoloft prescription.   Plaintiff failed to appear for his follow-up examination on August 4, 2009.   (PageID.306).   On October 26, 2009, Dr. Simon wrote a two-sentence letter which states as follows:   "Harvey Anderson has some depression.   I initiated initial treatment, but he has not followed through.   Therefore, I cannot, with any accuracy, say how his condition would be if adequately treated."   (PageID.305).

On November 9, 2009, plaintiff received a consultative examination by Psychologist Kenneth Vander Woude.   (PageID.320-26).   Plaintiff indicated that he had no recent medical hospitalizations and "[n]o psychiatric hospitalizations or outpatient mental health counseling.   (PageID.320).   He stated that his medications were Zoloft and Ranitidine and reported that his medications were helpful.   (*Id.*).   Plaintiff identified Dr. Vance as his physician.   Plaintiff disclosed that he continued to smoke "1 ½ packs of cigarettes a day."   Psychologist Vander Woude noted:   "He smokes marijuana, 'At least once a week, I guess.   It helps me sleep.'   He denies use of other street drugs.   He had one arrest for possession of marijuana.   He spent 30 days in jail.   He had an arrest for nonpayment of child

support." (*Id.*).   Plaintiff reported that he performed all household chores, hauling firewood inside the residence.   His indicated that he was making wishing wells and taking care of his dog and rabbit.   (PageID.321).   Plaintiff was able to drive himself to the appointment.   (*Id.*).   Psychologist Vander Woude offered a diagnosis of dysthymia, nicotine dependence and marijuana abuse.   (PageID.324).

Plaintiff's first contact with Howard Mahabeer, M.D., at Physicians Health Services occurred on May 17, 2010, about three years after plaintiff's alleged onset of disability.   (PageID.218, 248, 381, 417).   He provided a history indicating that he had depression, headaches, and shortness of breath.   He stated that he smoked cigarettes, but did not advise Dr. Mahabeer of his marijuana use or his history of extensive alcohol use.   (PageID.418, 464, 492).   Plaintiff related that he had a history of depression and "was on Zoloft."   He also reported chronic neck and back pain and that he had been seen by Doctors Vance and Marzolf in the past.   Plaintiff stated that he had bilateral carpal tunnel syndrome, but did not identify the physician who made the diagnosis or the time period when the diagnosis was purportedly provided.   (PageID.417).   Plaintiff reported that he had no memory loss, no lightheadedness, no headaches, and no gait difficulties.   He had "[n]o suicide ideation or attempts, sleeps well, no hyperactivity, no compulsive behavior." (PageID.418).   Dr. Mahabeer described plaintiff as well developed, well nourished, and in no acute distress.   (PageID.418).   Plaintiff's extremities displayed no edema, cyanosis or clubbing.   His gait was intact and his station and posture were normal. Plaintiff had a normal range of motion and normal muscle strength and tone in his

neck.   He had a full range of motion in all extremities.   (PageID.418-20).   Dr. Mahabeer indicated that his plan was to address plaintiff's reports of recurring neck and lower back pain with Vicodin and Desyrel and that his office would provide plaintiff with samples of Cellebrex, Nexium, and Zyprexa.   He instructed plaintiff to return in a few months.   (PageID.420).

Plaintiff returned to Dr. Mahabeer on June 10, 2010.   He sought and obtained a refill of the Vicodin prescription.   (PageID.414).   He sought treatment for the bilateral carpal tunnel syndrome that he had reported.   Dr. Mahabeer gave plaintiff Toradol injections in each wrist.[2]   (*Id.*).

On August 30, 2010, Dr. Mahabeer noted that plaintiff's mood and affect were appropriate.   He displayed bilateral lower paraspinal tenderness and reduced flexion, lateral motion and rotation.   Plaintiff also displayed neck tenderness.   Dr. Mahabeer offered a diagnosis of lumbago and depression and indicated that he would provide plaintiff with prescriptions for Motrin, Vicodin, and Paxil.   (PageID.412-13). From November 2010 through April 2011, Dr. Mahabeer's diagnosis remained neck pain, low back pain (lumbago), and depression with anxiety.   (PageID.400-09).

---

2  Plaintiff argues that the June 10, 2010, progress notes constitutes a diagnosis of carpal tunnel syndrome.   (Plf. Brief at 6, 13, PageID.570, 577; Reply Brief at 2, PageID.599).   It does not.   Plaintiff would have a point if this administrative record contained an express statement by Dr. Mahabeer offering a diagnosis of carpal tunnel syndrome, objective test evidence indicating that plaintiff had carpal tunnel syndrome, or even a history of extended treatment for the condition.   Here, however, the record show that plaintiff made a self-diagnosis, received injections on a single occasion, and thereafter, carpal tunnel syndrome was never mentioned in any progress notes.   (PageID.381-413, 478-83, 509-39).   Dr. Mahabeer did not include carpal tunnel syndrome among his diagnoses.   (PageID.498, 499).

Plaintiff returned on January 24, 2011, and Dr. Mahabeer refilled prescriptions. (PageID.403-06).

On July 7, 2011, plaintiff displayed tenderness around the sciatic notch and trochanteric bursa and had a reduced range of motion in his hips.  Dr. Mahabeer offered a diagnosis of possible fibromalgia and gave plaintiff samples of Lyrica. (PageID.398).   On September 6, 2011, Dr. Mahabeer observed that plaintiff's affect was not depressed or anxious. (PageID.393).   He planned to address plaintiff's mood disorder with prescriptions for Zyprexa and Paxil.   (PageID.394). On December 6, 2011, plaintiff reported that he continued smoking a pack of cigarettes per day. Plaintiff was not in any acute distress.   He maintained normal muscle strength and tone in all extremities and had a normal range of motion without pain. (PageID.387, 389).

On January 4, 2012, Dr. Mahabeer indicated that plaintiff did not have anxiety or depression.   He did have a tobacco use disorder.   Dr. Mahabeer counseled plaintiff on smoking cessation.   (PageID.385-86).   In February 2012, Dr. Mahabeer noted that plaintiff had normal muscle strength, tone, and range of motion in all extremities. (PageID.382-83).

On March 14, 2012, plaintiff complained of anxiety.   His mood an affect were normal.   He demonstrated appropriate judgment and insight.   Dr. Mahabeer initiated a trial of Trazodone.   (PageID.481).

On May 29, 2012, plaintiff received a consultative psychiatric evaluation performed by Rudy Bogoian, III, M.D.   (PageID.400-06).   Plaintiff reported that he

had many friends.   He was able to drive.   He had no history of hospitalization for any mental impairment.   He was not participating in any outpatient therapy.   He had no history of surgeries.   Plaintiff "endorsed use of 1 pack of cigarettes per day, and beginning at age 16, using alcohol, up to 12 beers a day, with last use three years ago, and beginning at age 15 using cannabis, up to six joints a day, with last use this morning."   (PageID.492).   He reported that he was not taking any mood stabilizers or antipsychotics.   He was taking the antidepressant Trazodone.   He was also taking Norco and Tramodol.   Plaintiff reported the "side effects of upset stomach, and overheating, but otherwise he f[ound] his medications helpful." (PageID.493).   Plaintiff was oriented and alert.   His stream of thought was logical and coherent.   He had good recent and fair long term memory.   He was able to read the HIPAA form rapidly and accurately.   (PageID.493).

Dr. Bogoian offered a working diagnosis of "Anxiety disorder, NOS[,] Depression, NOS, and Alcohol and Cannabis use/abuse with recent use of Cannabis. Rule out:   Major depressive disorder, Dysthymia, GAD, Mood disorder secondary to Alcohol and Cannabis use, and Learning Disabilities."   (PageID.494).   Dr. Bogoian opined that plaintiff would be able to understand, remember, and carry out simple instructions.   Plaintiff would be able to interact with the public, supervisors, and co-workers.   Dr. Bogoian   noted:   "His substance use/dependence/abuse may contribute to his mood symptoms.   One may infer if he were to return to using alcohol and other illicit substances, his mental functioning may worsen.   He had little insight into this.   He may benefit from psychiatric intervention, and may

benefit from episodic educational and supportive alcohol and illicit substances abstinence treatment." (PageID.494-95).

On June 2, 2012, Ruqia Tareen, M.D., reviewed the evidence and offered an opinion that there was no evidence of a mental disorder that would prevent plaintiff from performing work involving simple, repetitive tasks on a sustained basis. (PageID.101-02, 114-15).

On April 25, 2013, plaintiff testified at his administrative hearing.   Plaintiff was not being treated by any psychologist, counselor, or other mental health care provider.   He did receive Elavil that Dr. Mahabeer, a general practitioner, prescribed for his depression.   (PageID.76-78).   When the ALJ asked plaintiff about his attorney's passing reference to diabetes, plaintiff responded that he was not aware of any diagnosis of diabetes.   (PageID.77).

It was against this backdrop that the ALJ considered RFC questionnaire that Dr. Mahabeer signed on July 16, 2012 (PageID.498-502)[3] in which he offered his opinion that plaintiff was unable to work.   (*See* Op. at 9-11, PageID.59-61).   None of the opinions expressed by Dr. Mahabeer regarding plaintiff's disability or RFC were entitled to controlling weight.

The issues of disability and RFC are reserved to the Commissioner.   See 20 C.F.R. §§ 404.1527(d), 416.927(d); *see Allen v. Commissioner*, 561 F.3d at 652.   If a treating physician "submits an opinion on an issue reserved to the

---

3 The ALJ also considered the medical records that Dr. Mahabeer generated after July 16, 2012.   (Op. at 8-9, PageID.58-59).

Commissioner--such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors--his decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)).

Dr. Mahabeer's predictions of how often plaintiff would likely miss work was conjecture, not a medical opinion. *See Murray v. Commissioner*, 1:10-cv-97, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Dr. Mahabeer's underlying progress notes did not support the level of restriction that he suggested in his questionnaire responses.[4]

The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions. *See e.g., Hill v. Commissioner*, 560 F. App'x 547, 549-50 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir. 2012). Here,

---

4 ALJs are not bound by conclusory statements of treating physicians where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton v. Halter*, 246 F.3d at 773; *see also Hernandez v. Commissioner*, No. 1:14-cv-958, 2015 WL 3513863, at * 5 (W.D. Mich. June 4, 2015). "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best [.]" *Smith v. Commissioner*, No. 13-cv-12759, 2015 WL 899207, at * 13 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Commissioner*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n. 6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

the ALJ gave a more than adequate explanation of his consideration of Dr. Mahabeer's statements and gave good reasons why he found that the opinions expressed therein were entitled to little weight.

**3.**

Plaintiff's brief concludes with a paragraph asserting that the ALJ violated SSR 06-03p by not discussing a 3rd party function report signed by Teri A. Anderson and a one sentence statement that the ALJ "did not discuss any other medical opinions in the file including that of Dr. Rudy Bogoian III." (Plf. Brief at 18, Page ID 582; *see also* Reply Brief at 4, PageID.601). Both arguments are deemed waived. The arguments are waived because they were not included in plaintiff's statement of errors. *See Nichols v. Commissioner*, No. 1:12-cv-995, 2014 WL 4259445, at * 9 (W.D. Mich. Aug.28, 2014) (collecting cases). In addition, the arguments are waived because they are raised in a perfunctory manner. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see Moore v. Commissioner*, 573 F. App'x 540, 543 (6th Cir. 2014); *Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

Even assuming that these arguments had not been waived, they are meritless. The ALJ not only discussed Dr. Bogoian's opinions (Op. at 9, PageID.59), he gave them "significant weight." (*Id.* at 10, PageID.60).

Plaintiff argues that the ALJ committed reversible error when he failed to discuss the third party function report of his "ex-wife/friend," Terri A. Anderson. Plaintiff states that her report "should have been evaluated in accordance with SSR 06-3p." (Brief at 19, PageID.582). Ms. Anderson's statement is not evidence from an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)); *see also Hickox v. Commissioner*, No. 1:09-cv-343, 2011 WL 6000829, at * 4 (W.D. Mich. Nov. 30, 2011). As an ex-wife and friend, Ms. Anderson is an "other source." The ALJ is required to "consider" evidence from other sources. 2006 WL 2329939, at * 2, 6. This is not a demanding standard, and it was easily met here. The ALJ considered the objective medical evidence and the "other evidence." (Op. at 5, PageID.55). She considered the evidence in accordance with the requirements of SSR 06-03p. (Op. at 6, PageID.56).

There is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Commissioner*, 30 F. App'x 542, 547-48 (6th Cir. 2002). "An ALJ is not required to discuss all the evidence

- 20 -

submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner of Social Security*, 152 F. App'x. 485, 489 (6th Cir. 2005). "SSR 06-3p does not require that an ALJ discuss opinions supplied by 'other sources' or to explain the evidentiary weight assigned thereto." *Hickox v. Commissioner*, 2010 WL 3385528, at * 7 (W.D. Mich. Aug. 2, 2010).

> SSR 06-3p is phrased in permissive rather than mandatory terms:
>
> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends and neighbors, it *would be appropriate* to consider such factors as the nature and extent to the relationship, whether the evidence is consistent with the other evidence, and any other factors that tends to support or refute the evidence.

2006 WL 2329939, at * 6 (emphasis added). SSR 06-3p uses the permissive term "should" in connection with the ALJ's explanation of the "consideration" given to "other source" opinions:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of the opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator *should generally explain the weight given to the opinions from these "other sources,"* or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at * 6 (emphasis added); *see Vanportfliet v. Commissioner*, No. 1:10-cv-578, 2012 WL 1345315, at * 15 (W.D. Mich. Mar. 26, 2012); *see also Bernard v. Commissioner*, No. 11-12951, 2012 WL 3639054, at * 12 (E.D. Mich. July 25,

2012).   The Court finds no error in the ALJ's consideration of Ms. Anderson's statement.

Finally, even if the ALJ did commit an error, it was harmless on this administrative record.   Harmless error analysis applies in this context.   *See Johnson v. Commissioner*, No. 13-cv-14797, 2015 WL 730094, at * 37 (E.D. Mich. Feb. 19, 2015); *accord Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006) ("No principle of administrative law or common sense requires [this Court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (quoting *Fisher v. Bowen*, 869 F.3d 1055, 1057 (7th Cir.1989)).   Plaintiff has not identified any significant evidence overlooked by the ALJ (Plf. Brief at 19, PageID.582: Reply Brief at 4-5, PageID.601-02), nor could he given that the plaintiff's function report and the one supplied by Ms. Anderson are almost identical.   Ms. Anderson and plaintiff completed and signed their function reports on the same date.   (PageID.226, 233, 244).   The responses found in the reports are almost entirely duplicative, with plaintiff's version being slightly more restrictive.   For example, both responded "not well" to a question regarding how plaintiff handles changes in routine. (PageID.232, 243).   Ms. Anderson stated that plaintiff "was able to cook."   Plaintiff stated that he could not "stand long to cook complete meals, mostly just meat." (PageID.228, 239).   In the paragraph regarding plaintiff's medications, all four medications were listed in the identical order.   The fourth item listed on both

reports was medical marijuana [5] causing the side effect of "drowsiness." (PageID.233, 244).   The ALJ's extensive consideration of the report that plaintiff signed (Op. at 6, PageID.56) more than adequately took Ms. Anderson's duplicative report into account.   *See Johnson v. Commissioner*, No. 13-cv-14797, 2015 WL 730094, at * 37.

<u>**Conclusion**</u>

For the reasons set forth herein, the decision of the Commissioner will be affirmed.

Dated:   <u>March 14, 2016</u>                    <u> /s/ Paul L. Maloney                   </u>
                                                                       Paul L. Maloney
                                                                       United States District Judge

---

[5] There is nothing in the administrative record suggesting that any physician prescribed marijuana as treatment for any medical impairment.   Plaintiff's physicians advised him to stop smoking cigarettes and marijuana.